## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.** |
| | ) | |
| **$383,456.21 IN U.S. CURRENCY** | ) | |
| **SEIZED FROM WELLS FARGO** | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the United States of America, (the "United States" or the "Government"), by and through Bobby L. Christine, United States Attorney for the Southern District of Georgia, and Xavier A. Cunningham, Assistant United States Attorney, and brings this Verified Complaint for Civil Forfeiture *In Rem*, with the following allegations:

## NATURE OF THE ACTION

1.      *In Rem* civil forfeiture is permissible under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

2.      The Defendant *In Rem* is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 982 on the grounds that the Defendant Property is proceeds traceable to and/or derived from bank fraud in violation of 18 U.S.C. § 1344 and property involved in money laundering in violation of 18 U.S.C. §§ 1956 and/or 1957.

## THE DEFENDANT *IN REM*

3.     Defendant Property is approximately $383,456.21, seized from individual Wells Fargo checking accounts ending in 0106 and 5378, held in the name of Angela Rupert (hereinafter, the "Defendant Property").

## JURISDICTION AND VENUE

4.     The United States brings this action *In Rem* in its own right to forfeit the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).   This Court has *In Rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district.

## OVERVIEW OF THE INVESTIGATION

6.     This forfeiture action stemmed from a seizure of the Defendant Property which was determined to be proceeds from an active bank fraud currently under investigation by the Secret Service.

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in Small Business Administration ("SBA") guaranteed forgivable loans to small businesses through the Paycheck Protection

Program ("PPP").  In April 2020,  Congress authorized over $300 billion in additional PPP funding.

8.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which must be signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative representations and certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

9.      A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

10.      PPP loan proceeds must be used by the business on certain permissible expenses, to include payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period

of time (usually 24 weeks of receiving the proceeds) and uses at least 60% of the PPP loan proceeds on payroll expenses.

11.     The PPP is overseen by the SBA, which is headquartered at 409 3rd Street SW, Washington, DC 20416, and has authority over all loans.  Individual PPP loans, however, are issued by private approved lenders (most commonly, banks and credit unions), who receive and process PPP applications and supporting documentation, and then make loans using the lenders' own funds.  To date, over 4,900 lending institutions have participated in the PPP.

## FACTS AND BASIS FOR FORFEITURE

12.     Angela Ruppert ("Ruppert") works for Transitions Real Estate in North Augusta South Carolina.

13.     During an ongoing and continuing investigation into alleged fraudulently obtained SBA loans, U.S. Secret Service Special Agent Sean Sojack learned of a deposit of more than $56,000 into a Wells Fargo account belonging to Ruppert.

14.     While further investigating the legitimacy of these funds Agent Sojack discovered that an additional $500,000 that was deposited into two accounts; one was a personal account belonging to Ruppert ending in 5378, and the other was a business account ending in 0106 held in the name Transitions Real Estate which was controlled by Ruppert.

15.     Both aforementioned accounts were opened less than 30 days prior to these deposits.

16.     On September 21, 2020 at approximately 11:30am, Agent Sojack placed a recorded telephonic call to Ruppert.  During that call she informed Agent Sojack that she had been contacted by a man on the dating site Tinder.  Soon after the online relationship began this unknown subject began to provide money to Ruppert.  She advised that it was small amounts at first.  However beginning on or around July 20, 2020, and continuing on or around August 7, 2020, approximately $500,000 was deposited into the two accounts she had previously opened. Two of the deposits included a $348,573 deposit for SBA Global Logistics and a $56,100 deposit for Four Winds Gallery.  Both of these deposits are marked as "SBAD Treas 310" deposits.

17.     Financial Institutions identify deposits coming from the United States Treasury Small Business Administration Disaster relief program as SBAD 310. These identifications are specifically designed for the PPP loan program Congress enacted as referenced above in Paragraphs 7-11.

18.     When asked, Ruppert stated she has no connection with either of these entities and has no knowledge of an SBA loan in those names. Therefor the funds deposited into her account constitute fraudulent activity and thus are subject to seizure.

19.     Ruppert was directed by the unknown subject to withdraw money from the accounts previously identified and then deposit them into various accounts. Ruppert stated, and evidence shows, that she conducted some of those transactions at ATM's located in Augusta GA.  She further wired money to accounts both known and unknown to her.  At an unspecified date Ruppert contacted her Attorney, Jessie

Glen and made him aware of what had happened. She stated she felt as though something was not right and asked for his guidance. Ruppert went on to say that she and Glen contacted Wells Fargo and asked that the accounts be frozen and held until such time as they could determine the legitimacy of the funds.

20.     At the time Ruppert estimated there was up to $390,000 still located in the two above referenced accounts.

21.     On September 28, 2020, a Magistrate Judge in the Southern District of Georgia issued a seizure warrant to Wells Fargo, thus permitting the Government to seize the Defendant Property held in the accounts.

22.     On October 8, 2020, Wells Fargo turned over $383,456.21 which is now the Defendant Property in this civil forfeiture matter.

### **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that:

A.      process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the Defendant Property;

B.      that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ Xavier A. Cunningham*
_____
Xavier A. Cunningham
Assistant United States Attorney
New York Bar Number 5269477

P.O. Box 8970
Savannah, GA 31412